UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| ADOBE SYSTEMS INCORPORATED, | Case No. 18-CV-06063-LHK |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE** |
| v. | |
| BERNARD NWUBAH, | Re: Dkt. No. 34 |
| Defendant. | |

Before the Court is Plaintiff Adobe Systems Incorporated's ("Plaintiff") motion for default judgment. ECF No. 34. Having considered the filings of Plaintiff, the relevant law, and the record in the instant case, the Court DENIES Plaintiff's motion for default judgment without prejudice.

I. **BACKGROUND**

A. **Factual Background**

Plaintiff is a Delaware corporation with a principal place of business in San Jose, California. ECF No. 1 ("Compl.") ¶ 1. Defendant Bernard Nwubah ("Defendant") is an individual who resides in New Orleans, Louisiana. *Id.* ¶ 2. Defendant does business under the names "Bright Optics" and "Bright Optics 544." *Id.* Plaintiff alleges that ten Doe Defendants also

1
Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

serve as employees and agents of Defendant. *Id.* ¶ 4.

Plaintiff develops and distributes computer software (collectively, "Adobe-Branded Software"). *Id.* ¶ 12. In connection with Plaintiff's business, Plaintiff owns numerous trademarks that Plaintiff uses to market and sell software. *Id.* ¶ 17. Of relevance to the instant case, Plaintiff has registered the following six word and design marks, which Plaintiff uses in connection with Plaintiff's sale of computer software programs: ADOBE® (USPTO Reg. No. 1,475,793), A ADOBE® (USPTO Reg. No. 1,901,149), A® (USPTO Reg. Nos. 1,852,943 and 2,081,343), and ACROBAT® (USPTO Reg. Nos. 1,833,219 and 3,652,382). *Id.* Plaintiff has also secured copyright registrations for various versions of software, such as Adobe Acrobat X Pro (TX 7-358-035) and Adobe Acrobat XI Pro (TX 7-624-519), among others, with the United States Copyright Office. *Id.*

Plaintiff alleges that Defendant advertised and sold counterfeit Adobe-Branded Software through numerous internet sales platforms. *Id.* ¶ 22. For example, Plaintiff alleges that Defendant used www.ebay.com ("eBay") to sell counterfeit Adobe-Branded Software through numerous seller IDs, such as "wal4732," "bernarnwuba_0," "jbiggs2me_4," and others. *Id.* Plaintiff asserts that when Defendant conducted sales of counterfeit Adobe-Branded Software through eBay, Defendant utilized the payment platform PayPal, Inc. ("PayPal"). *Id.* ¶ 23.

Plaintiff alleges that Defendant also sold counterfeit Adobe-Branded Software through other online sales platforms, such as the ones located at www.amazon.com ("Amazon"), www.bonanza.com ("Bonanza"), www.dealscube.com ("dealsCube"), and www.toucandeal.com ("Toucan Deal"). *Id.* ¶ 24. Defendant purportedly used a number of seller IDs to sell Adobe-Branded Software on these platforms, such as "sambiggs," "Top Shop," "Bright Optics," "gregla," "Bcnwubah," "Lashop112," "lashop," "lagreg," and "lashopster," among others. *Id.*

Plaintiff alleges that Plaintiff regularly investigates the sale of counterfeit Adobe-Branded Software on the foregoing platforms. *Id.* ¶ 22. In the course of these investigation efforts, Plaintiff alleges that Plaintiff made eight "evidentiary buys" from Defendant, the details of which are outlined below.

2

Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

On or about March 1, 2016, Plaintiff purchased a purported "Adobe Acrobat X Pro Full Version for Windows" from Defendant's eBay account "wal4732" for a cost of $88.99. *Id.* ¶ 27. Payment was made through PayPal to the email address "pablorange@yahoo.com" identified in the PayPal receipt as "Pablo Orange." *Id.* On or about March 3, 2016, Plaintiff received a shipment pursuant to this order with a return address of "Bright Optics, P.O. Box 870662, New Orleans, LA 70187." *Id.* The shipment contained a copy of software that purported to be ADOBE ACROBAT X PRO© contained in packaging virtually identical to Plaintiff's packaging, complete with Plaintiff's trademarks and copyrights. *Id.* Plaintiff confirmed that the item provided by Defendant contained a counterfeit copy of ADOBE ACROBAT X PRO©. *Id.* ¶ 28. Plaintiff also confirmed that the disc and packaging were counterfeit and had not been manufactured or authorized for manufactured by Plaintiff. *Id.* Moreover, the serial number affixed to the product was counterfeit and would not decode. *Id.* On July 25, 2016, Plaintiff mailed a cease-and-desist letter to Defendant at the return address identified in the aforementioned package. *Id.* ¶ 29. Plaintiff received no response. *Id.* When Plaintiff sent follow-up correspondences to Defendant via email on August 22, 2016, and September 6, 2016, Plaintiff again received no response. *Id.*

On or about June 7, 2017, Plaintiff purchased a purported "Adobe Acrobat XI Pro Full Version 2PCs for Windows Digital/Download with Updates" from Defendant's Bonanza account "sambiggs" for a cost of $45.00. *Id.* ¶ 30. Payment was made via Amazon Pay, and the Bonanza receipt identified "bcnwubah@ymail.com" as the seller. *Id.* On or about that same date, Plaintiff received an email from the seller through Bonanza that provided a serial number and a link to a download of software that purported to be ADOBE ACROBAT XI PRO©. *Id.* Plaintiff confirmed that the file downloaded from the link contained a counterfeit copy of ADOBE ACROBAT XI PRO©. *Id.* ¶ 31. Moreover, the serial number provided by Defendant was counterfeit. *Id.* On July 7, 2017, Plaintiff mailed Defendant another cease-and-desist letter, this time to Defendant's residence. *Id.* ¶ 32. Plaintiff received no response. *Id.* Plaintiff sent follow-up correspondences to Defendant via email on August 1, 2018 and August 16, 2018. *Id.*

On or about August 10, 2017, Plaintiff purchased a purported "Adobe Acrobat XI Pro Full

3
Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

Version 2PCs for Windows with Updates Download" from Defendant's Bonanza account "gregla" for a cost of $35.00. *Id.* ¶ 34. On or about that same date, on August 10, 2017, Plaintiff received an email from Defendant through Bonanza that contained a serial number and a link to download the software that purported to be ADOBE ACROBAT XI PRO©. *Id.* Plaintiff then confirmed that the file contained a counterfeit copy of ADOBE ACROBAT XI PRO©. *Id.* ¶ 35. Moreover, the serial number provided by Defendant was counterfeit. *Id.* Plaintiff sent a third cease-and-desist letter to Defendant via email on August 30, 2017. *Id.* ¶ 36. Plaintiff sent follow-up emails on September 25, 2017 and October 9, 2017. *Id.* Plaintiff received no response. *Id.*

On or about October 12, 2017, Plaintiff purchased a purported "Adobe Acrobat Xi Pro Full Version for Windows 3pc with Updates!!" from Defendant's dealsCube account "Bcnwubah" for a cost of $30.00. *Id.* ¶ 37. Payment was made through dealsCube, which identified the seller on the invoice as "Bright Optics, PO Box 870612, New orleans [*sic*], Louisiana 70187, United States." *Id.* On or about that same date, Plaintiff received an email from the seller from the email address "brightoptics544@yahoo.com." *Id.* The email provided a serial number and a link to download a copy of software that purported to be ADOBE ACROBAT XI PRO©. *Id.* Plaintiff confirmed that the file contained a counterfeit copy of ADOBE ACROBAT XI PRO©. *Id.* ¶ 38. Moreover, the serial number provided by Defendant was counterfeit. *Id.*

On or about November 16, 2017, Plaintiff purchased a purported "Adobe Acrobat Xi Pro Full Version 2 PC's for Windows" from Defendant's Bonanza account "Lashop112" for a cost of $35.00. Payment was made via Amazon Pay, which identified the seller with the email address "sambiggsny@yahoo.com." *Id.* ¶ 39. On or about that same date, Plaintiff received an email from Defendant through Bonanza with a serial number and a link to download a copy of software that purported to be ADOBE ACROBAT XI PRO©. *Id.* Plaintiff confirmed that the file contained a counterfeit copy of ADOBE ACROBAT XI PRO©. *Id.* ¶ 40. Moreover, the serial number provided by Defendant was counterfeit. *Id.* On January 30, 2018, Plaintiff sent another cease-and-desist letter to Defendant via email but once again received no response. *Id.* ¶ 41.

On or about March 19, 2018, Plaintiff purchased a purported "Adobe Acrobat Xi Pro

4

Download full American Version" from Defendant's Toucan Deal account "Top Shop" for a cost of $29.99. *Id.* ¶ 42. Payment was made through PayPal to "Big Nard," with the email address "bignard504@gmail.com." *Id.* On or about that same date, Plaintiff received an email from "Bright Optics," from the email address "brightoptics544@yahoo.com," that provided a serial number and a link to download a copy of software that purported to be ADOBE ACROBAT XI PRO©. *Id.* Plaintiff confirmed that the file downloaded at the link contained a counterfeit copy of ADOBE ACROBAT XI PRO©. *Id.* ¶ 43. Moreover, the serial number provided by Defendant was counterfeit. *Id.*

On or about June 26, 2018, Plaintiff made a purchase of a purported "Adobe Acrobat Xi Pro Download Full Version!! for Windows (2 PC's)" from Defendant's eBay account "bernarnwuba_0" for a cost of $23.00. *Id.* ¶ 44. Payment was made via credit card to "WAL4732." *Id.* On or about that same date, Plaintiff received an email through eBay that provided a serial key and a link to download a copy of software that purported to be ADOBE ACROBAT XI PRO©. *Id.* Plaintiff confirmed that the file downloaded at the link contained a counterfeit copy of ADOBE ACROBAT XI PRO©. *Id.* ¶ 45. Moreover, the serial number provided by Defendant was counterfeit. *Id.*

Finally, on or about January 9, 2019, Plaintiff purchased a purported "Adobe Acrobat XI Pro Download Full Version!! For Windows()" from Toucan Deal from Defendant's Toucan Deal account "Icey Deals" for a cost of $45.00. ECF No. 34-1 at 9. Payment was made through PayPal to "The Deals," with an email address of "chuknwubah@gmail.com." *Id.* On or about the same date, January 9, 2019, Plaintiff received an email from "La Shop," from the email address "lashop808@gmail.com," that provided a serial number and a link to download a copy of software that purported to be ADOBE ACROBAT XI PRO©. *Id.* Plaintiff confirmed that both the file and the serial number were counterfeit. *Id.*

**B. Procedural History**

On October 3, 2018, Plaintiff filed a complaint against Defendant that alleged five claims: (1) federal trademark infringement, 15 U.S.C. § 1114, (2) false designation of origin and unfair

5

competition, 15 U.S.C. § 1125(a), (3) trademark dilution, 15 U.S.C. § 1125(c), (4) federal copyright infringement, 17 U.S.C. § 501(a), and (5) violation of the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.* ECF No. 1 ("Compl.").

Defendant was served with Plaintiff's complaint on December 3, 2018. ECF No. 17. On December 25, 2018, Plaintiff and Defendant stipulated that Defendant would have until January 23, 2019 to answer Plaintiff's complaint. *Id.* Defendant did not meet the January 23, 2019 deadline. Accordingly, on March 1, 2019, Plaintiff moved for entry of default against Defendant. ECF No. 22. On March 7, 2019, the Clerk entered default against Defendant. ECF No. 27.

On March 6, 2019, the Court held a case management conference that Plaintiff attended. ECF No. 39. At the March 6, 2019 case management conference, the Court raised the issue of personal jurisdiction over Defendant and required Plaintiff to address personal jurisdiction, and particularly the Ninth Circuit's decision in *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), in any motion for default judgment. *Id.* at 1–2.

On June 5, 2019, Plaintiff moved to take limited third-party discovery in order to learn the extent of Defendant's allegedly infringing sales. ECF No. 29. On June 5, 2019, the same day, the Court granted Plaintiff's motion for third-party discovery. ECF No. 31.

On August 14, 2019, Plaintiff filed the instant motion for default judgment. ECF No. 34. Plaintiff's motion for default judgment only contained a single paragraph discussion of personal jurisdiction over Defendant, and Plaintiff's motion for default judgment failed to discuss *Boschetto*. *Id.* at 2. On August 16, 2019, without seeking leave of the Court, Plaintiff then filed a supplemental brief that addressed the Court's personal jurisdiction over Defendant. ECF No. 39.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default judgment when the Clerk, under Rule 55(a), has previously entered a party's default. Fed. R. Civ. P. 55(b). "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). Once the Clerk enters default, all well-pleaded allegations regarding liability are taken as true, except with respect to damages. *See Fair*

*Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination of liability and the default judgment itself, the general rule is that well-pled allegations in the complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the truth of Plaintiff's averments."). "In applying this discretionary standard, default judgments are more often granted than denied." *Philip Morris*, 219 F.R.D. at 498.

"Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

## III. DISCUSSION

### A. Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted). In order to avoid the entry of an order of default judgment that may subsequently be attacked as void, the Court must determine whether jurisdiction over the instant case exists. The Court begins with subject matter jurisdiction and then proceeds to personal jurisdiction.

#### 1. Subject Matter Jurisdiction

Here, Plaintiff brings this action, in part, pursuant to federal law, namely the Lanham Act and 17 U.S.C. §501(a). Therefore, the Court is satisfied that the Court has subject matter

jurisdiction pursuant to 28 U.S.C. § 1331. 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). The Court also has supplemental jurisdiction over Plaintiff's related state law claim that Plaintiff brings under the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq*. *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."). The Court proceeds to consider whether the Court possesses personal jurisdiction over Defendant.

### 2. Personal Jurisdiction

In the ordinary course of litigation, a defect in personal jurisdiction is either asserted or waived by a party. *See* Fed. R. Civ. P. 12(h)(1) (explaining that defects in personal jurisdiction are waived unless timely raised in a Rule 12 motion to dismiss or responsive pleading). Not so in the context of a motion for default judgment. Instead, "when a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *In re Tuli*, 172 F.3d at 712 (citations omitted).

"The party seeking to invoke the court's jurisdiction bears the burden of establishing that jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v. Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). "Personal jurisdiction over an out-of-state defendant is appropriate if the relevant state's long arm-statute permits the assertion of jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004). California's long arm statute, Cal. Civ. Proc. Code § 410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional analyses under California law and federal due process are the same. *See* Cal. Civ. Proc. Code § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due

8
Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

process requirements, so the jurisdictional analyses under state law and federal due process are the same.").

For a court to exercise personal jurisdiction over a defendant consistent with due process, that defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). In addition, "the defendant's 'conduct and connection with the forum State' must be such that the defendant 'should reasonably anticipate being haled into court there.'" *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

A court may exercise either general or specific jurisdiction over a defendant. *Ziegler v. Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995). General jurisdiction exists when a defendant is physically present or when a defendant's activities in the state are "continuous and systematic" such that the contacts approximate physical presence in the forum state. *See Schwarzenegger*, 374 F.3d at 801 (citation omitted). If general jurisdiction is inappropriate, a court may still exercise specific jurisdiction if the defendant "has sufficient contacts with the forum state in relation to the cause of action." *Sher*, 911 F.2d at 1361. The Court considers each type of personal jurisdiction in turn.

### a. General Jurisdiction

The Court may exercise general personal jurisdiction over a defendant who is domiciled in the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Additionally, general jurisdiction over a nonresident exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant may be "haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. Plaintiff alleges that Defendant resides in New Orleans, Louisiana, and Plaintiff does not allege that Defendant is a California domiciliary. Compl. ¶ 2. Nor does Plaintiff allege that Defendant has the level of continuous and systematic contacts with California that would support

a finding of general jurisdiction. Accordingly, Defendant is not subject to this Court's general jurisdiction.

### b. Specific Jurisdiction

When general personal jurisdiction is absent, the Court may still exercise specific personal jurisdiction in appropriate circumstances. For specific jurisdiction, the Ninth Circuit has adopted a three-prong test that requires the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802.

The first prong of the Ninth Circuit's specific jurisdiction test requires a showing of either purposeful direction or purposeful availment, depending on the claims at issue. *Id.* Accordingly, the first question before the Court is whether Plaintiff's complaint implicates purposeful direction or purposeful availment. "For both trademark infringement actions and copyright infringement actions, the Ninth Circuit requires a showing of purposeful direction." *Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015). The same is true for claims brought under California's Unfair Competition Law. *Id.* Thus, the Court must determine whether Plaintiff has met the burden of showing that Defendant *purposefully directed* the activities that underlie the instant case at California.

To establish purposeful direction, a plaintiff must show that a defendant satisfies the so-called *Calder* test. As the Ninth Circuit has explained, to satisfy the *Calder* test, a plaintiff must show that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012).

In the instant case, the Court concludes that Plaintiff has not met the burden of establishing that Defendant "purposefully directed" Defendant's activities at California. Accordingly, personal jurisdiction over Defendant does not exist.

### i. Intentional Act

10

Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

In the context of the *Calder* test, an intentional act is "an external manifestation of the actor's intent to perform an actual, physical act in the real world." *Wash. Shoe Co.*, 704 F.3d at 674; *Schwarzenegger*, 374 F.3d at 806 (an intentional act "refers to an intent to perform an actual, physical act in the real world"). In the Ninth Circuit, an "intentional act" includes selling an allegedly infringing product. *Wash. Shoe Co.*, 704 F.3d at 674.

According to Plaintiff, Defendant engaged in numerous sales of allegedly counterfeit Adobe-Branded Software. Compl. ¶¶ 19–51. This conduct clearly amounts to a series of "intentional acts" for the purposes of the *Calder* test. *Wash. Shoe Co.*, 704 F.3d at 674. Accordingly, Plaintiff has satisfied the first prong of the *Calder* test.

### ii. Express Aiming

Plaintiff fares less well under the second prong of the *Calder* test. Plaintiff never specifically discusses the express aiming prong of the *Calder* test. However, the facts that Plaintiff alleges in support of personal jurisdiction fall short of establishing express aiming on the part of Defendant.

Plaintiff argues that Defendant engaged in "continuous ongoing marketing and sales [of counterfeit Adobe-Branded Software] over at least a two year period." ECF No. 34 at 3. Accordingly, Plaintiff claims that "it is undeniable that Defendant's e-commerce conduct was intentional and [that] such conduct caused harm to [Plaintiff] in California." *Id.* at 4. However, this is simply not enough to satisfy the express aiming requirement of the *Calder* test. In *Walden v. Fiore*, 571 U.S. 277 (2014), the United States Supreme Court stressed that specific personal jurisdiction must arise from a defendant's *own contacts* with the forum state, not from a plaintiff's or a third party's contacts with the forum state. *Id.* at 286. Thus, due process "requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* It is clear from *Walden* that Plaintiff cannot establish express aiming merely by pointing to the fact that Plaintiff suffered harm in California. *See, e.g.*, *Axiom Foods, Inc. v. Acerchem Internat'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017)

11

(explaining that a theory of "individualized targeting" is no longer sufficient to establish express aiming).

Accordingly, the Court must determine whether Defendant's *own contacts* constitute express aiming at California. Numerous courts have confronted this issue in the context of online sales platforms like the ones Defendant used to sell the allegedly counterfeit Adobe-Branded Software in the instant case. Indeed, the Ninth Circuit has specifically held that "maintenance of a passive website alone cannot satisfy the express aiming prong." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010). Instead, "something more," namely "conduct directly targeting the forum," is required for express aiming. *Id.* In the instant case, Plaintiff has failed to establish the existence of "something more."

Plaintiff points to several intentional acts undertaken by Defendant that Plaintiff argues amount to express aiming. Specifically, Plaintiff points to "eight (8) evidentiary buys" that Plaintiff's investigators made from Defendant's eBay, Bonanza, dealsCube, and Toucan Deal accounts, across a two-year period. *Id.* at 4. These "evidentiary buys," however, are simply the kind of "random, fortuitous, [] attenuated" contacts that depend on *Plaintiff's contacts with the forum*, not the contacts of Defendant.

In a similar case, in *Graco v. Minnesota Inc. v. PF Brands, Inc.*, No. 18-CV-1690-WQH-AGS, 2019 WL 1746580 (S.D. Cal. Apr. 17, 2019), the Southern District of California recently considered a plaintiff's claim that a defendant violated the Lanham Act and California's Unfair Competition Law because the defendant sold allegedly infringing products through various "websites and platforms including eBay, Amazon, and PayPal." *Id.* at *5. Just as in the instant case, the plaintiff in *Graco* used investigators to "purchase and receive the products in California." *Id.* at *6. Notwithstanding this fact, the *Graco* court held that the plaintiff had failed to show express aiming at California. *Id.* As the *Graco* court explained, these purchases did not "show that Defendants' business [was] targeted at a California-specific market or industry," or that "California [was] the 'focal point' of both the infringement claims and the alleged harm in this case." *Id.*; *see also ThermoLife Internat'l LLC v. NetNutri.com LLC*, No. 18-CV-04248-PHX-JJT,

12

2019 WL 3220547, at *3 (D. Ariz. July 17, 2019) (holding that "[a]lthough Defendant has sold some of its products to residents of Arizona" through a website, plaintiff still failed to show express aiming in the absence of "something more").

More generally, the Ninth Circuit has held that an online sale into a forum state is "insufficient to have created a substantial connection" with that forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1017 (9th Cir. 2008). Plaintiff seeks to distinguish *Boschetto* because *Boschetto* applied the purposeful availment test, not the purposeful direction test, and because *Boschetto* only involved a single eBay sale. ECF No. 39 at 2–3. However, courts have readily applied the logic of *Boschetto* to the purposeful direction context. *See, e.g.*, *Adobe Sys. Inc. v. Cardinal Camera & Video Center, Inc.*, No. 15-CV-02991-JST, 2015 WL 5834135, at *5 (N.D. Cal. Oct. 7, 2015) (applying *Boschetto* in the purposeful direction context). Moreover, "[d]istrict courts have extended this [*Boschetto*] principle to cases involving multiple sales entering the forum simply because the purchasers happened to live in the forum." *Id.*

Thus, a limited number of products shipped into a forum flowing from a defendant's online sales activity is insufficient to establish express aiming. *See id.* ("[Plaintiff] has not alleged or provided evidence of purposeful direction beyond the 1.2% of sales that happen to go to purchasers in California through [Defendant]'s Amazon.com account."); *Imageline, Inc. v. Hendricks*, No. CV 09-1870 DSF (AGRx), 2009 WL 10286181, at *4 (C.D. Cal. Aug. 12, 2009) ("Defendants did not purposefully direct actions towards California. Instead, they made their goods available on the Internet and those goods happened to have been purchased in California."). The eight "evidentiary buys" that Plaintiff made over a two-year period cannot establish express aiming because they do not show that Defendant's "contacts with California were systematic and continuous rather than isolated and fortuitous." *Oakley, Inc. v. Donofrio*, No. SACV 12-02191-CJC(RNBx), 2013 WL 12126017, at *6 (C.D. Cal. June 14, 2013).

Plaintiff also points to the fact that Plaintiff "sent from California to Defendant at least ten (10) written notices of infringement from 2016 through 2018, four (4) of which clearly stated that a lawsuit would be filed in California if the conduct did not stop." ECF No. 34 at 3. Notices of

13

Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

infringement sent from California do not transform Defendant's conduct into express aiming, however. The fact that the notices were sent from California depends on *Plaintiff's contacts with the forum.* It is the happenstance of Plaintiff's own presence in California that supplies the connection to the forum, not Defendant's conduct. As one district court recently observed, "to find personal jurisdiction based on receipt of a letter from [a forum state] would essentially be to hold that a trademark holder can always sue wherever it happens to be located." *Lerner v. Exec. Mktg. Consultants*, No. 2:18-CV-01481-JAD-DJA, 2019 WL 3936399, at *4 (D. Nev. Aug. 20, 2019) (internal quotation marks and alterations omitted); *see also, e.g.*, *Graco*, 2019 WL 1746580, at *6 (holding that there was no showing of express aiming notwithstanding "cease and desist letter sent to inform Defendants of the infringement and Plaintiff's intent to file suit in California").

Finally, Plaintiff points to the fact that "Defendant contacted [Plaintiff's] counsel around December 19, 2018, regarding this lawsuit and an extension of time to respond to the Complaint, while acknowledging that he had sold Adobe merchandise through Amazon.com and Bonanza.com." ECF No. 39 at 4. According to Plaintiff, "Defendant had the opportunity to dispute jurisdiction at this time, but there was no dispute or discussion regarding jurisdiction." *Id.* Plaintiff's argument appears to be that Defendant's failure to raise the issue of personal jurisdiction—combined with Defendant's subsequent default—amounted to consent to personal jurisdiction. This argument clearly fails.

Consent to personal jurisdiction may be either "express or implied." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (internal quotation marks omitted). Plaintiff does not argue that Defendant expressly consented to personal jurisdiction. Instead, Plaintiff seems to argue that Defendant's failure to raise personal jurisdiction during the conversation with Plaintiff, and Defendant's subsequent default, amounted to implied consent to personal jurisdiction. Examples of implied consent include agreeing to "a forum selection clause in a contract," "filing a proof of claim in a bankruptcy proceeding," or "filing an original complaint, a counterclaim or a cross-claim." *SEC v. Ross*, 504 F.3d 1130, 1149 (9th Cir. 2007). Defendant's failure to

14

Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

affirmatively raise the issue of personal jurisdiction during the single out-of-court conversation with Plaintiff plainly falls well short of these examples. Further, Defendant's default obviously does not operate as implied consent to personal jurisdiction, since that would mean a default judgment could *never* be void for lack of personal jurisdiction. That is plainly not the case. *See Mason v. Genisco Tech. Corp.*, 960 F.2d 849, 854 (9th Cir. 1992) ("[W]e find that the district court in the earlier action lacked personal jurisdiction over [defendant]. The default judgment is void and lacks res judicata effect in the present action.").

Accordingly, the Court concludes that Plaintiff has failed to satisfy the second prong of the *Calder* test. Because Plaintiff has failed to satisfy the second prong of the *Calder* test, "the Court need not address the third prong, the other prongs of the specific jurisdiction test more broadly, or the *Eitel* factors governing whether default judgment is appropriate." *Gabor v. Deshler*, No. 17-CV-01524-LHK, 2018 WL 2762411, at *10 (N.D. Cal. June 7, 2018) (citations omitted).

**B. Disposition**

As explained in the foregoing, Plaintiff has failed to demonstrate that this Court can exercise personal jurisdiction over Defendant. The Ninth Circuit has held that "when a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *In re Tuli*, 172 F.3d at 712 (citing *Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 771–72 (10th Cir. 1997)). "Where there are questions about the existence of personal jurisdiction, however, a court should allow the plaintiff the opportunity to establish that jurisdiction is proper." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1051 (N.D. Cal. 2010) (citing *In re Tuli*, 172 F.3d at 713).

In the instant case, and as Plaintiff has acknowledged, the Court specifically requested that Plaintiff address personal jurisdiction in the motion for default judgment. ECF No. 39. Plaintiff filed a supplemental brief that addressed personal jurisdiction, which the Court considered in the instant order. *Id.* The Court also permitted Plaintiff to take third-party discovery in support of the instant motion for default judgment. ECF No. 31. Plaintiff has therefore already received "the opportunity to establish that jurisdiction is proper." *Craigslist, Inc.*, 694 F. Supp. 2d at 1051.

15

Case No. 18-CV-06063-LHK
ORDER DENYING MOTION FOR DEFAULT JUDGMENT WITHOUT PREJUDICE

Notwithstanding the foregoing, the Court will provide Plaintiff one final opportunity to demonstrate that the Court possesses personal jurisdiction over Defendant, and that default judgment against Defendant is appropriate. In particular, the Court notes that Plaintiff includes several exhibits that purport to show Defendant's total amount of sales of counterfeit Adobe-Branded Software across the United States and in other countries. *See* ECF Nos. 34-40, 34-41, 34-42, 34-43, 34-44, 34-45. It is not clear from the face of these exhibits how many sales Defendant made to California in particular. Moreover, Plaintiff only cites these exhibits for the proposition that "Defendant has sold approximately 4,886 units of unauthorized and counterfeit Adobe software for a total sales revenue of $221,149.65 from 2015 through 2018" *around the globe*. ECF No. 34 at 7. This proposition does not establish express aiming at *California* in particular.

However, it is possible that these sales records will demonstrate that Defendant's "contacts with *California* were systematic and continuous rather than isolated and fortuitous." *Donofrio*, 2013 WL 12126017, at *6 (emphasis added); *see also Cave Man Kitchens Inc. v. Caveman Foods, LLC*, No. 2:18-CV-01274, 2019 WL 3891327, at *6 (W.D. Wash. Aug. 19, 2019) ("The sale of [Defendant's] products in Washington is not 'coincidental' but rather a predictable consequence of Defendant's business model."). If Defendant "conduct[s] regular sales in California," then Plaintiff may be able to satisfy the express aiming prong of the *Calder* test, and hence may be able to establish personal jurisdiction over Defendant. *Boschetto*, 539 F.3d at 1018.

Accordingly, the Court DENIES without prejudice Plaintiff's motion for default judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES without prejudice Plaintiff's motion for default judgment. Plaintiff shall file any new motion for default judgment within 30 days of this order. If Plaintiff fails to file a new motion for default judgment within 30 days or fails to cure the deficiencies identified in this Order, the Court will dismiss the instant case with prejudice for lack of personal jurisdiction.

**IT IS SO ORDERED.**

Dated: December 5, 2019

_____
LUCY H. KOH
United States District Judge