United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>Plaintiff,<br><br>v.<br><br>BERNARD NWUBAH,<br><br>Defendant. | Case No. 18-CV-06063-LHK<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 45 |

Before the Court is Plaintiff Adobe Systems Incorporated's ("Plaintiff") motion for default judgment.  ECF No. 45.  Having considered the filings of Plaintiff, the relevant law, and the record in the instant case, the Court GRANTS Plaintiff's motion for default judgment.

I.      **BACKGROUND**

   A. **Factual Background**

      Plaintiff is a Delaware corporation with a principal place of business in San Jose, California.  ECF No. 1 ("Compl.") ¶ 1.  Defendant Bernard Nwubah ("Defendant") is an individual who resides in New Orleans, Louisiana.  *Id.* ¶ 2.  Defendant does business under the names "Bright Optics" and "Bright Optics 544."  *Id.*  Plaintiff alleges that ten Doe Defendants also serve as employees and agents of Defendant.  *Id.* ¶ 4.

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

Plaintiff develops and distributes computer software (collectively, "Adobe-Branded Software"). *Id.* ¶ 12. In connection with Plaintiff's business, Plaintiff owns numerous trademarks that Plaintiff uses to market and sell software. *Id.* ¶ 17. Of relevance to the instant case, Plaintiff has registered the following six word and design marks, which Plaintiff uses in connection with Plaintiff's sale of computer software programs: ADOBE® (USPTO Reg. No. 1,475,793), A ADOBE® (USPTO Reg. No. 1,901,149), A® (USPTO Reg. Nos. 1,852,943 and 2,081,343), and ACROBAT® (USPTO Reg. Nos. 1,833,219 and 3,652,382). *Id.* Plaintiff has also secured copyright registrations for various versions of software, such as Adobe Acrobat X Pro (TX 7-358-035) and Adobe Acrobat XI Pro (TX 7-624-519), among others, with the United States Copyright Office. *Id.* ¶ 18.

Plaintiff alleges that Defendant advertised and sold counterfeit Adobe-Branded Software through numerous internet sales platforms. *Id.* ¶ 22. For example, Plaintiff alleges that Defendant used www.ebay.com ("eBay") to sell counterfeit Adobe-Branded Software through numerous seller IDs, such as "wal4732," "bernarnwuba_0," "jbiggs2me_4," and others. *Id.* Plaintiff asserts that when Defendant conducted sales of counterfeit Adobe-Branded Software through eBay, Defendant utilized the payment platform PayPal, Inc. ("PayPal"). *Id.* ¶ 23.

Plaintiff alleges that Defendant also sold counterfeit Adobe-Branded Software through other online sales platforms, such as the ones located at www.amazon.com ("Amazon"), www.bonanza.com ("Bonanza"), www.dealscube.com ("dealsCube"), and www.toucandeal.com ("Toucan Deal"). *Id.* ¶ 24. Defendant purportedly used a number of seller IDs to sell Adobe-Branded Software on these platforms, such as "sambiggs," "Top Shop," "Bright Optics," "gregla," "Bcnwubah," "Lashop112," "lashop," "lagreg," and "lashopster," among others. *Id.*

Plaintiff alleges that Plaintiff regularly investigates the sale of counterfeit Adobe-Branded Software on the foregoing platforms. *Id.* ¶ 22. In the course of these investigation efforts, Plaintiff alleges that Plaintiff made eight "evidentiary buys" from Defendant, the details of which are outlined below.

On or about March 1, 2016, Plaintiff purchased a purported "Adobe Acrobat X Pro Full

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

Version for Windows" from Defendant's eBay account "wal4732" for a cost of $88.99.  *Id.* ¶ 27.

Payment was made through PayPal to the email address "pablorange@yahoo.com" identified in

the PayPal receipt as "Pablo Orange."  *Id.*  On or about March 3, 2016, Plaintiff received a

shipment pursuant to this order with a return address of "Bright Optics, P.O. Box 870662, New

Orleans, LA 70187."  *Id.*  The shipment contained a copy of software that purported to be ADOBE

ACROBAT X PRO© contained in packaging virtually identical to Plaintiff's packaging, complete

with Plaintiff's trademarks and copyrights.  *Id.*  Plaintiff confirmed that the item provided by

Defendant contained a counterfeit copy of ADOBE ACROBAT X PRO©.  *Id.* ¶ 28.  Plaintiff also

confirmed that the disc and packaging were counterfeit and had not been manufactured or

authorized for manufactured by Plaintiff.  *Id.*  Moreover, the serial number affixed to the product

was counterfeit and would not decode.  *Id.*

On July 25, 2016, Plaintiff mailed a cease-and-desist letter to Defendant at the return

address identified in the aforementioned package.  *Id.* ¶ 29.  Plaintiff received no response.  *Id.*

When Plaintiff sent follow-up correspondences to Defendant via email on August 22, 2016, and

September 6, 2016, Plaintiff again received no response.  *Id.*

On or about June 7, 2017, Plaintiff purchased a purported "Adobe Acrobat XI Pro Full

Version 2PCs for Windows Digital/Download with Updates" from Defendant's Bonanza account

"sambiggs" for a cost of $45.00.  *Id.* ¶ 30.  Payment was made via Amazon Pay, and the Bonanza

receipt identified "bcnwubah@ymail.com" as the seller.  *Id.*  On or about that same date, Plaintiff

received an email from the seller through Bonanza that provided a serial number and a link to a

download of software that purported to be ADOBE ACROBAT XI PRO©.  *Id.*  Plaintiff

confirmed that the file downloaded from the link contained a counterfeit copy of ADOBE

ACROBAT XI PRO©.  *Id.* ¶ 31.  Moreover, the serial number provided by Defendant was

counterfeit.  *Id.*

On July 7, 2017, Plaintiff mailed Defendant another cease-and-desist letter, this time to

Defendant's residence.  *Id.* ¶ 32.  Plaintiff received no response.  *Id.*  Plaintiff sent follow-up

correspondences to Defendant via email on August 1, 2018 and August 16, 2018.  *Id.*

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1

On or about August 10, 2017, Plaintiff purchased a purported "Adobe Acrobat XI Pro Full

2   Version 2PCs for Windows with Updates Download" from Defendant's Bonanza account "gregla"

3   for a cost of $35.00.  *Id.* ¶ 34.  On or about that same date, on August 10, 2017, Plaintiff received

4   an email from Defendant through Bonanza that contained a serial number and a link to download

5   the software that purported to be ADOBE ACROBAT XI PRO©.  *Id.*  Plaintiff then confirmed

6   that the file contained a counterfeit copy of ADOBE ACROBAT XI PRO©.  *Id.* ¶ 35.  Moreover,

7   the serial number provided by Defendant was counterfeit.  *Id.*

8

Plaintiff sent a third cease-and-desist letter to Defendant via email on August 30, 2017.  *Id.*

9   ¶ 36.  Plaintiff sent follow-up emails on September 25, 2017 and October 9, 2017.  *Id.*  Plaintiff

10  received no response.  *Id.*

11

On or about October 12, 2017, Plaintiff purchased a purported "Adobe Acrobat Xi Pro Full

12  Version for Windows 3pc with Updates!!" from Defendant's dealsCube account "Bcnwubah" for

13  a cost of $30.00.  *Id.* ¶ 37.  Payment was made through dealsCube, which identified the seller on

14  the invoice as "Bright Optics, PO Box 870612, New orleans [*sic*], Louisiana 70187, United

15  States."  *Id.*  On or about that same date, Plaintiff received an email from the seller from the email

16  address "brightoptics544@yahoo.com."  *Id.*  The email provided a serial number and a link to

17  download a copy of software that purported to be ADOBE ACROBAT XI PRO©.  *Id.*  Plaintiff

18  confirmed that the file contained a counterfeit copy of ADOBE ACROBAT XI PRO©.  *Id.* ¶ 38.

19  Moreover, the serial number provided by Defendant was counterfeit.  *Id.*

20

On or about November 16, 2017, Plaintiff purchased a purported "Adobe Acrobat Xi Pro

21  Full Version 2 PC's for Windows" from Defendant's Bonanza account "Lashop112" for a cost of

22  $35.00. Payment was made via Amazon Pay, which identified the seller with the email address

23  "sambiggsny@yahoo.com."  *Id.* ¶ 39.  On or about that same date, Plaintiff received an email from

24  Defendant through Bonanza with a serial number and a link to download a copy of software that

25  purported to be ADOBE ACROBAT XI PRO©.  *Id.*  Plaintiff confirmed that the file contained a

26  counterfeit copy of ADOBE ACROBAT XI PRO©.  *Id.* ¶ 40.  Moreover, the serial number

27  provided by Defendant was counterfeit.  *Id.*

28

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1    On January 30, 2018, Plaintiff sent another cease-and-desist letter to Defendant via email

2    but once again received no response.  *Id.* ¶ 41.

3    On or about March 19, 2018, Plaintiff purchased a purported "Adobe Acrobat Xi Pro

4    Download full American Version" from Defendant's Toucan Deal account "Top Shop" for a cost

5    of $29.99.  *Id.* ¶ 42.  Payment was made through PayPal to "Big Nard," with the email address

6    "bignard504@gmail.com."  *Id.*  On or about that same date, Plaintiff received an email from

7    "Bright Optics," from the email address "brightoptics544@yahoo.com," that provided a serial

8    number and a link to download a copy of software that purported to be ADOBE ACROBAT XI

9    PRO©.  *Id.*  Plaintiff confirmed that the file downloaded at the link contained a counterfeit copy of

10   ADOBE ACROBAT XI PRO©.  *Id.* ¶ 43.  Moreover, the serial number provided by Defendant

11   was counterfeit.  *Id.*

12   On or about June 26, 2018, Plaintiff made a purchase of a purported "Adobe Acrobat Xi

13   Pro Download Full Version!! for Windows (2 PC's)" from Defendant's eBay account

14   "bernarnwuba_0" for a cost of $23.00.  *Id.* ¶ 44.  Payment was made via credit card to

15   "WAL4732."  *Id.*  On or about that same date, Plaintiff received an email through eBay that

16   provided a serial key and a link to download a copy of software that purported to be ADOBE

17   ACROBAT XI PRO©.  *Id.*  Plaintiff confirmed that the file downloaded at the link contained a

18   counterfeit copy of ADOBE ACROBAT XI PRO©.  *Id.* ¶ 45.  Moreover, the serial number

19   provided by Defendant was counterfeit.  *Id.*

20   Finally, on or about January 9, 2019, Plaintiff purchased a purported "Adobe Acrobat XI

21   Pro Download Full Version!! For Windows()" from Toucan Deal from Defendant's Toucan Deal

22   account "Icey Deals" for a cost of $45.00.  ECF No. 34-1 at 9.  Payment was made through PayPal

23   to "The Deals," with an email address of "chuknwubah@gmail.com."  *Id.*  On or about the same

24   date, January 9, 2019, Plaintiff received an email from "La Shop," from the email address

25   "lashop808@gmail.com," that provided a serial number and a link to download a copy of software

26   that purported to be ADOBE ACROBAT XI PRO©.  *Id.*  Plaintiff confirmed that both the file and

27   the serial number were counterfeit.  *Id.*

28

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

### B.  Procedural History

On October 3, 2018, Plaintiff filed a complaint against Defendant that alleged five claims: (1) federal trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and unfair competition, 15 U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); (4) federal copyright infringement, 17 U.S.C. § 501(a); and (5) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*  ECF No. 1 ("Compl.").  Plaintiff sought both injunctive relief and statutory damages.  *Id.* ¶¶ 62, 72, 78, 84, 91, 92.

Defendant was served with Plaintiff's complaint on December 3, 2018.  ECF No. 17.  On December 25, 2018, Plaintiff and Defendant stipulated that Defendant would have until January 23, 2019 to answer Plaintiff's complaint.  *Id.*  Defendant did not meet the January 23, 2019 deadline.  Accordingly, on March 1, 2019, Plaintiff moved for entry of default against Defendant. ECF No. 22.  On March 7, 2019, the Clerk entered default against Defendant.  ECF No. 27.

On March 6, 2019, the Court held a case management conference that Plaintiff attended. ECF No. 39.  At the March 6, 2019 case management conference, the Court raised the issue of personal jurisdiction over Defendant and required Plaintiff to address personal jurisdiction, and particularly the Ninth Circuit's decision in *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), in any motion for default judgment.  *Id.* at 1–2.

On June 5, 2019, Plaintiff moved to take limited third-party discovery in order to learn the extent of Defendant's allegedly infringing sales.  ECF No. 29.  On June 5, 2019, the same day, the Court granted Plaintiff's motion for third-party discovery.  ECF No. 31.

On August 14, 2019, Plaintiff filed a motion for default judgment.  ECF No. 34.  Plaintiff's motion for default judgment only contained a single paragraph discussion of personal jurisdiction over Defendant, and Plaintiff's motion for default judgment failed to discuss *Boschetto*.  *Id.* at 2. On August 16, 2019, Plaintiff filed a supplemental brief that addressed the Court's personal jurisdiction over Defendant.  ECF No. 39.

On December 5, 2019, the Court denied Plaintiff's motion for default judgment without prejudice.  ECF No. 43.  The Court concluded that Plaintiff failed to demonstrate that the Court

6

1    had personal jurisdiction over Defendant.  Specifically, under the "purposeful direction" test,

2    Plaintiff was required to show that Defendant "(1) committed an intentional act, (2) expressly aimed

3    at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum

4    state." *Id*. at 10 (quoting *Wash. Shoe Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir.

5    2012).  Though Plaintiff demonstrated that Defendant committed an intentional act and thus satisfied

6    the first prong of the purposeful direction test, Plaintiff did not fulfill the second, express aiming

7    prong.

8         Specifically, Plaintiff attempted to establish express aiming "merely by pointing to the fact that

9    Plaintiff suffered harm in California."  *Id*. at 11.  This, the Court held, was "simply not enough to

10   satisfy the express aiming requirement" because "specific personal jurisdiction must arise from a

11   defendant's *own contacts* with the forum state, not from a plaintiff's or a third party's contacts with the

12   forum state."  *Id*. (citing *Walden v. Fiore*, 571 U.S. 277, 286 (2014)).

13        Instead, the Court determined that it "must determine whether Defendant's *own contacts*

14   constitute express aiming at California."  *Id*.  Plaintiff argued that its eight evidentiary buys across a

15   two-year period amounted to express aiming.  The Court concluded otherwise because "[t]hese

16   'evidentiary buys' . . . [were] simply the kind of 'random, fortuitous, attenuated' contacts that depend

17   on *Plaintiff's contacts with the forum*, not the contacts of Defendants."  *Id*. (internal alterations

18   omitted).  The Court then analyzed relevant case law and determined that "a limited number of

19   products shipped into a forum flowing from a defendant's online sales activity is insufficient to

20   establish express aiming."  *Id*. at 13.

21        The Court therefore denied Plaintiff's motion for default judgment.  The Court, however,

22   denied the motion without prejudice and noted that "Plaintiff includes several exhibits that purport to

23   show Defendant's total amount of sales of counterfeit Adobe-Branded Software across the United

24   States and in other countries.  *Id*. at 16.  Though it was "not clear from the face of these exhibits how

25   many sales Defendant made to California in particular," the Court held that these sale records could

26   "demonstrate that Defendant's contacts with *California* were systematic and continuous rather than

27   isolated and fortuitous," so long as the records established that "Defendant conduct[ed] regular sales in

28

7

1   California." *Id.*

2        On January 3, 2020, Plaintiff filed the instant motion for default judgment.  ECF No. 45

3   ("Mot.").  Additionally, pursuant to the Court's instruction, Plaintiff proffered third-party sales records

4   that establish that from December 2016 to July 2018, Defendant made 863 sales to California

5   consumers for $36,251.28—or approximately 18 percent of Defendant's total 4,795 sales.  ECF No.

6   45-1 ("Pham Decl.") ¶¶ 15, 16.

7   **II.        LEGAL STANDARD**

8        Pursuant to Federal Rule of Civil Procedure 55(b)(2), the Court may enter a default

9   judgment when the Clerk, under Rule 55(a), has previously entered a party's default.  Fed. R. Civ.

10  P. 55(b).  "The district court's decision whether to enter a default judgment is a discretionary one."

11  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  Once the Clerk enters default, all well-

12  pleaded allegations regarding liability are taken as true, except with respect to damages.  *See Fair*

13  *Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002) ("With respect to the determination

14  of liability and the default judgment itself, the general rule is that well-pled allegations in the

15  complaint regarding liability are deemed true."); *TeleVideo Sys. v. Heidenthal*, 826 F.2d 915, 917–

16  18 (9th Cir. 1987) ("[U]pon default the factual allegations of the complaint, except those relating

17  to the amount of damages, will be taken as true."); *Philip Morris USA v. Castworld Prods.*, 219

18  F.R.D. 494, 499 (C.D. Cal. 2003) ("[B]y defaulting, Defendant is deemed to have admitted the

19  truth of Plaintiff's averments.").  "In applying this discretionary standard, default judgments are

20  more often granted than denied."  *Philip Morris*, 219 F.R.D. at 498.

21        "Factors which may be considered by courts in exercising discretion as to the entry of a

22  default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of

23  plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in

24  the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was

25  due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil

26  Procedure favoring decisions on the merits."  *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir.

27  1986).

28

United States District Court
Northern District of California

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

### III.  DISCUSSION

#### A.  Jurisdiction

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties. A judgment entered without personal jurisdiction over the parties is void." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) (citations omitted).  In order to avoid the entry of an order of default judgment that may subsequently be attacked as void, the Court must determine whether jurisdiction over the instant case exists.  The Court begins with subject matter jurisdiction and then proceeds to personal jurisdiction.

##### 1.  Subject Matter Jurisdiction

Here, Plaintiff brings this action, in part, pursuant to federal law, namely the Lanham Act and 17 U.S.C. §501(a).  Therefore, the Court is satisfied that the Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").  The Court also has supplemental jurisdiction over Plaintiff's related state law claim that Plaintiff brings under the California Unfair Competition Law, Cal. Bus. Prof. Code § 17200, *et seq.*  *See* 28 U.S.C. § 1367(b) ("In any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.").  The Court proceeds to consider whether the Court possesses personal jurisdiction over Defendant.

##### 2.  Personal Jurisdiction

In the ordinary course of litigation, a defect in personal jurisdiction is either asserted or waived by a party.  *See* Fed. R. Civ. P. 12(h)(1) (explaining that defects in personal jurisdiction are waived unless timely raised in a Rule 12 motion to dismiss or responsive pleading).  Not so in the context of a motion for default judgment.  Instead, "when a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *In*

9

1    *re Tuli*, 172 F.3d at 712 (citations omitted).

2         "The party seeking to invoke the court's jurisdiction bears the burden of establishing that

3    jurisdiction exists." *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986) (citing *Data Disc, Inc. v.*

4    *Sys. Tech. Assocs.*, 557 F.2d 1280, 1285 (9th Cir. 1977)).  "Personal jurisdiction over an out-of-

5    state defendant is appropriate if the relevant state's long arm-statute permits the assertion of

6    jurisdiction without violating federal due process." *Schwarzenegger v. Fred Martin Motor Co.*,

7    374 F.3d 797, 800–01 (9th Cir. 2004).  California's long arm statute, Cal. Civ. Proc. Code §

8    410.10, is co-extensive with federal due process requirements, and therefore the jurisdictional

9    analyses under California law and federal due process merge into one.  *See* Cal. Civ. Proc. Code

10   § 410.10 ("[A] court of this state may exercise jurisdiction on any basis not inconsistent with the

11   Constitution of this state or of the United States."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647

12   F.3d 1218, 1223 (9th Cir. 2011) ("California's long-arm statute . . . is coextensive with federal due

13   process requirements, so the jurisdictional analyses under state law and federal due process are the

14   same.").

15        For a court to exercise personal jurisdiction over a defendant consistent with due process,

16   that defendant must have "certain minimum contacts" with the relevant forum "such that the

17   maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

18   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457,

19   463 (1940)).  In addition, "the defendant's 'conduct and connection with the forum State' must be

20   such that the defendant 'should reasonably anticipate being haled into court there.'"  *Sher v.*

21   *Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990) (quoting *World-Wide Volkswagen Corp. v.*

22   *Woodson*, 444 U.S. 286, 297 (1980)).

23        A court may exercise either general or specific jurisdiction over a defendant.  *Ziegler v.*

24   *Indian River Cty.*, 64 F.3d 470, 473 (9th Cir. 1995).  General jurisdiction exists when a defendant

25   is physically present or when a defendant's activities in the state are "continuous and systematic"

26   such that the contacts approximate physical presence in the forum state.  *See Schwarzenegger*, 374

27   F.3d at 801 (citation omitted).  If general jurisdiction is inappropriate, a court may still exercise

United States District Court
Northern District of California

28

10

specific jurisdiction if the defendant "has sufficient contacts with the forum state in relation to the cause of action." *Sher*, 911 F.2d at 1361. The Court considers each type of personal jurisdiction in turn.

### a. General Jurisdiction

The Court may exercise general personal jurisdiction over a defendant who is domiciled in the forum state. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Additionally, general jurisdiction over a nonresident exists where a defendant has "continuous and systematic" contacts with the forum state such that the defendant may be "haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801. Plaintiff alleges that Defendant resides in New Orleans, Louisiana, and Plaintiff does not allege that Defendant is a California domiciliary. Compl. ¶ 2. Nor does Plaintiff allege that Defendant has the level of continuous and systematic contacts with California that would support a finding of general jurisdiction. Accordingly, Defendant is not subject to this Court's general jurisdiction.

### b. Specific Jurisdiction

When general personal jurisdiction is absent, the Court may still exercise specific personal jurisdiction in appropriate circumstances. For specific jurisdiction, the Ninth Circuit has adopted a three-prong test that requires the plaintiff to show that: (1) the defendant purposefully directed its activities at residents of the forum or purposefully availed itself of the privilege of doing business in the forum; (2) the plaintiff's claim arises out of or relates to those activities; and (3) the assertion of personal jurisdiction is reasonable and fair. *Schwarzenegger*, 374 F.3d at 802.

### i. Purposeful Direction

The first prong of the Ninth Circuit's specific jurisdiction test requires a showing of either purposeful direction or purposeful availment, depending on the claims at issue. *Id.* Accordingly, the first question before the Court is whether Plaintiff's complaint implicates purposeful direction or purposeful availment. "For both trademark infringement actions and copyright infringement actions, the Ninth Circuit requires a showing of purposeful direction." *Adobe Sys. Inc. v. Blue*

11

1    *Source Grp., Inc.*, 125 F. Supp. 3d 945, 960 (N.D. Cal. 2015).  The same is true for claims brought

2    under California's Unfair Competition Law.  *Id.*  Thus, the Court must determine whether Plaintiff

3    has met the burden of showing that Defendant *purposefully directed* the activities that underlie the

4    instant case at California.

5         To establish purposeful direction, a plaintiff must show that a defendant satisfies the so-

6    called *Calder* test.  As the Ninth Circuit has explained, to satisfy the *Calder* test, a plaintiff must

7    show that a defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3)

8    causing harm that the defendant knows is likely to be suffered in the forum state."  *Wash. Shoe*

9    *Co. v. A-Z Sporting Goods Inc.*, 704 F.3d 668, 673 (9th Cir. 2012).

10                • **Intentional Act**

11        In the context of the *Calder* test, an intentional act is "an external manifestation of the

12   actor's intent to perform an actual, physical act in the real world."  *Wash. Shoe Co.*, 704 F.3d at

13   674; *Schwarzenegger*, 374 F.3d at 806 (an intentional act "refers to an intent to perform an actual,

14   physical act in the real world").  In the Ninth Circuit, an "intentional act" includes selling an

15   allegedly infringing product.  *Wash. Shoe Co.*, 704 F.3d at 674.

16        According to Plaintiff, Defendant engaged in numerous sales of allegedly counterfeit

17   Adobe-Branded Software.  Compl. ¶¶ 19–51.  This conduct clearly amounts to a series of

18   "intentional acts" for the purposes of the *Calder* test.  *Wash. Shoe Co.*, 704 F.3d at 674.

19   Accordingly, Plaintiff has satisfied the first prong of the *Calder* test.

20                • **Express Aiming**

21        As the Court previously explained, in *Walden v. Fiore*, 571 U.S. 277 (2014), the United

22   States Supreme Court stressed that specific personal jurisdiction must arise from a defendant's

23   *own contacts* with the forum state, not from a plaintiff's or a third party's contacts with the forum

24   state.  *Id.* at 286.  Thus, due process "requires that a defendant be haled into court in a forum State

25   based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated'

26   contacts he makes by interacting with other persons affiliated with the State."  *Id.*  It is clear from

27   *Walden* that Plaintiff cannot establish express aiming merely by pointing to the fact that Plaintiff

28
                                                    12

suffered harm in California.  *See, e.g.*, *Axiom Foods, Inc. v. Acerchem Internat'l, Inc.*, 874 F.3d 1064, 1069–70 (9th Cir. 2017) (explaining that a theory of "individualized targeting" is no longer sufficient to establish express aiming).

Accordingly, the Court must determine whether Defendant's *own contacts* constitute express aiming at California.  Numerous courts have confronted this issue in the context of online sales platforms like the ones Defendant used to sell the allegedly counterfeit Adobe-Branded Software in the instant case.  Indeed, the Ninth Circuit has specifically held that "maintenance of a passive website alone cannot satisfy the express aiming prong."  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129 (9th Cir. 2010).  Instead, "something more," namely "conduct directly targeting the forum," is required for express aiming.  *Id.*

As the Court previously concluded, Plaintiff's eight "evidentiary buys" are insufficient to establish express aiming because these purchases are simply the kind of "random, fortuitous, [] attenuated" contacts that depend on *Plaintiff's contacts with the forum*, not the contacts of Defendant.  This time, however, Plaintiff also proffers evidence that from December 2016 to July 2018, Defendant made 863 sales to California consumers for $36,251.28—or approximately 18 percent of Defendant's total sales during that period.  Pham Decl. ¶¶ 15, 16.

Though limited online sales into a forum state are "insufficient to [create] a substantial connection" with that forum state, a defendant that "conduct[s] regular sales in California" may be able to satisfy the express aiming prong of the *Calder* test.  *Boschetto v. Hansing*, 539 F.3d 1011, 1017–18 (9th Cir. 2008).  Indeed, in its previous order denying Plaintiff's motion for default judgment without prejudice, the Court "note[d] that Plaintiff includes several exhibits that purport to show Defendant's total amount of sales of counterfeit Adobe-Branded Software across the United States and in other countries. . . . [I]t is possible that these sales records will demonstrate that Defendant's contacts with *California* were systematic and continuous rather than isolated and fortuitous."  ECF No. 43 at 16 (quotation marks omitted).

The Court now holds that these sales records and Plaintiff's explanation of their contents demonstrate that Defendant's contacts with California were systematic and continuous.  In the

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

instant case, Plaintiff has established that from December 2016 to July 2018, Defendant made 863 sales to California consumers for $36,251.28—or approximately 18 percent of Defendant's total sales during that period.  Pham Decl. ¶¶ 15, 16.  Given that these sales to California consumers constitute such a large percentage of Defendant's total sales and occurred consistently within days of other sales over a two-year period, Defendant's actions are not random, isolated or fortuitous and instead are systematic and continuous.  *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) (holding regular circulation of magazines in the forum state established specific jurisdiction because regular monthly sales of a substantial number of magazines could not be random, isolated, or fortuitous); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) ("[I]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve directly or indirectly, the market for its product in other States, it is not unreasonable to subject it to suit in one of those States . . . ."); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011) ("[I]t does not violate due process to hold [defendant] answerable in a California court for the contents of a website whose economic value turns, in significant measure, on its appeal to Californians.").

Indeed, this case is analogous to *Oakley, Inc. v. Donofrio*, 2013 WL 12126017 (C.D. Cal. Jun. 14, 2013).  In *Oakley*, the court held that specific jurisdiction was proper because defendant was not a "one-shot online seller" but rather, "engage[d] in a substantial volume of transactions" in California.  *Id*. at *5.  "While Defendants did not themselves operate eBay or specifically choose to sell to California customers, they did not passively place their items in the stream of commerce but rather exploited the benefits of the California market."  *Id*. at *6.  Specifically, "[t]he transaction records produced by Defendants in jurisdictional discovery, which show many California sales per month, reveal that Defendants' contacts with California were systematic and continuous rather than isolated and fortuitous."  *Id*. at *6.  Therefore, "[t]he sale of [Defendant's] products in [California] is not 'coincidental' but rather a predictable consequence of Defendant's business model."  *Cave Man Kitchens Inc. v. Caveman Foods, LLC*, 2019 WL 3891327, at *6

14

United States District Court
Northern District of California

(W.D. Wash. Aug. 19, 2019); *see also Mountz, Inc. v. Ne. Indus. Bolting & Torque, LLC.*, 2016 WL 6699295, at *4 (N.D. Cal. Sept. 30, 2016), *report and recommendation adopted*, 2016 WL 6679548 (N.D. Cal. Nov. 14, 2016) (holding plaintiff satisfied express aiming because, among other things, "Defendant sells to the general public, including to consumers who reside in the State of California and the Northern District of California" and "threatened to 'specifically go after' Plaintiff's customers, some of which are located in California").

Accordingly, Plaintiff has satisfied the express aiming requirement necessary to establish purposeful direction. The Court next addresses foreseeable harm—the third prong of the purposeful direction inquiry.

- **Foreseeable Harm**

"Harm suffered in the forum state is a necessary element in establishing purposeful direction." *Morrill*, 873 F.3d at 1144. There is foreseeable harm when a jurisdictionally sufficient amount of harm is suffered in the forum state. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et Antisemitisme,* 433 F.3d 1199, 1207 (9th Cir. 2006). Here, Plaintiff has established foreseeable harm because Defendant expressly aimed its conduct at the California market and a large proportion of Defendant's total infringing sales—approximately 18 percent, or 863 sales from December 2016 to July 2018—were to California consumers. *Mavrix Photo, Inc.*, 647 F.3d at 1231 ("The economic loss caused by the intentional infringement of a plaintiff's copyright is foreseeable."). "Because [Defendant's] actions destroyed this California-based value, a jurisdictionally significant amount of [Plaintiff's] economic harm took place in California." *Id*.; *see also Adobe Sys. Inc v. Accoladian Res., LLC*, 2014 WL 3737979, at *3 (N.D. Cal. July 28, 2014) ("The complaint alleges economic loss based on defendants' use of misappropriated software to compete for customers.").

Accordingly, Plaintiff has established purposeful direction, the first prong necessary for specific jurisdiction.

**ii. Claims Arising Out Of, Or Related To, Forum Activities**

The second prong of specific jurisdiction requires that a plaintiff's claims arise out of or

15

United States District Court
Northern District of California

United States District Court
Northern District of California

relate to a defendant's forum-based activities. *Schwarzenegger*, 374 F.3d at 802. Plaintiff

satisfies this requirement, as the Plaintiff's claims arise out of Defendant's "acts of willful

infringement and unfair competition in this district" and "in California." Compl. ¶ 8; *see*

*Accoladian Res.*, 2014 WL 3737979, at *4 (concluding that the plaintiff's claims arose out of the

defendant's activities in California because the defendant sold and distributed plaintiff's products

in California without authorization).

### iii.  Whether The Exercise of Personal Jurisdiction is Reasonable and Fair

The third and final prong requires assessing whether the exercise of personal jurisdiction is

reasonable and fair. *Schwarzenegger*, 374 F.3d at 802. In cases where the first two prongs of the

specific jurisdiction inquiry are satisfied, "the defendant [must] present a compelling case that the

exercise of jurisdiction would not be reasonable." *Id*. (quotation marks omitted). Here,

Defendant, "who is in default, has not argued that the exercise of personal jurisdiction is

unreasonable. Accordingly, the Court concludes that the exercise of personal jurisdiction over

[Defendant] is reasonable in the instant case." *Fresh Packing Corp. v. Guicho*, 2016 WL

1365947, at *5 (N.D. Cal. Apr. 6, 2016); *Neves v. Benchmark Recovery, Inc.*, 2015 WL 6957525,

at *2 (N.D. Cal. Nov. 11, 2015) (granting motion for default judgment and holding that

"exercising specific jurisdiction would be reasonable" because "Defendants have not argued that

this matter should be litigated elsewhere").

### c.  Service

Finally, for the Court to exercise personal jurisdiction over a defendant, the defendant must

have been served in accordance with Federal Rule of Civil Procedure 4. *See Jackson v.*

*Hayakawa*, 682 F.2d 1344, 1347 (9th Cir. 1982) ("Defendants must be served in accordance with

Rule 4(d) of the Federal Rules of Civil Procedure, or there is no personal jurisdiction." (footnote

omitted)); *see also Pension Tr. Fund for Operating Eng'rs v. Kickin Enters.*, 2012 WL 6711557,

at *3 (N.D. Cal. Dec. 20, 2012) ("[W]here entry of default judgment is requested, the Court must

determine whether service of process was adequate.").

Service on Defendant was proper. The affidavit of service shows that Defendant was

16

1    personally served and accepted service of Plaintiff's complaint on December 3, 2018.  ECF No.

2    16.  Indeed, on December 25, 2018, Plaintiff and Defendant stipulated that Defendant would have

3    until January 23, 2019 to answer Plaintiff's complaint.  ECF No. 17.  Defendant signed the

4    stipulation as a *pro se* litigant but thereafter refused to take any actions in instant case.  *Id*.

5    Accordingly, because service on Defendant was proper, the Court may exercise personal

6    jurisdiction over Defendant.  *See Marshall Wealth Mgmt. Grp., Inc. v. Santillo*, 2019 WL 79036,

7    at *4 (N.D. Cal. Jan. 2, 2019).

8    **B.  Whether Default Judgment is Proper**

9    Having determined that the exercise of subject matter jurisdiction and personal jurisdiction

10   over Defendant is appropriate, the Court now turns to the *Eitel* factors to determine whether entry

11   of default judgment against Defendant is warranted.

12   **1.  First *Eitel* Factor: the Possibility of Prejudice**

13   Under the first *Eitel* factor, the Court considers the possibility of prejudice to a plaintiff if

14   default judgment is not entered against a defendant.  "A plaintiff who is denied a default judgment

15   and is subsequently left without any other recourse for recovery has a basis for establishing

16   prejudice." *Adobe Sys. Inc. v. Acheampong*, 2019 WL 7212311, at *5 (N.D. Cal. Sept. 24, 2019),

17   *report and recommendation adopted*, 2019 WL 7212310 (N.D. Cal. Oct. 10, 2019).  Here,

18   Plaintiff has established that it will be prejudiced because Defendant has not participated in this

19   litigation beyond signing the stipulation and Plaintiff would be without recourse to stop

20   Defendant's infringement or to recover for the harm and damages caused by Defendant.

21   Therefore, the first *Eitel* factor weighs in favor of granting default judgment.

22   **2.  Second and Third *Eitel* Factors: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

23   

24   The second and third *Eitel* factors address the merits and sufficiency of Plaintiff's claims

25   as pleaded in the Complaint.  Courts often analyze these two factors together.  *See Dr. JKL Ltd. v.

26   HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the

27   merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed

28   

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

together.").  In its analysis of the second and third *Eitel* factors, the Court will accept as true all well-pled allegations regarding liability.  *See Fair Hous. of Marin*, 285 F.3d at 906 ("[T]he general rule is that well-pled allegations in the complaint regarding liability are deemed true.").  The Court will therefore consider the merits of Plaintiff's claims and the sufficiency of the Complaint together.

Plaintiff asserts five claims against Defendant: (1) federal trademark infringement, 15 U.S.C. § 1114; (2) false designation of origin and unfair competition, 15 U.S.C. § 1125(a); (3) trademark dilution, 15 U.S.C. § 1125(c); (4) federal copyright infringement, 17 U.S.C. § 501(a); and (5) violation of the UCL, Cal. Bus. Prof. Code § 17200, *et seq.*  However, Plaintiff's motion for default judgment does not ask for default judgment as to Plaintiff's third claim for trademark dilution.  Accordingly, the Court only analyzes whether the second and third *Eitel* factors are satisfied as to Plaintiff's first, second, fourth, and fifth causes of action.

### a.  Plaintiff Adequately Pleads Claim One for Federal Trademark Infringement, Claim Two for False Designation of Origin, and Claim Five for Violation of the UCL

Courts typically analyze claims for federal trademark infringement, false designation of origin, and violations of the UCL together.  *See, e.g.*, *Adobe Sys., Inc. v. Dafang USA, LLC*, 2019 WL 7841862, at *2 (C.D. Cal. Aug. 22, 2019); *Adobe Sys. Inc. v. Tanvir*, 2017 WL 2986219, at *3 (N.D. Cal. July 13, 2017) ("The first, second, and fifth claims [for trademark infringement, false designation of origin, and violations of the UCL] share the same analysis . . . .").

"To prevail on a claim of trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a party 'must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion.'"  *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)).

Here, as to the first issue, Plaintiff has adequately alleged and exhibited its ownership and rights to the six marks in question by providing the relevant registration certificates.  Compl. ¶ 17; *id.*, Ex. A.  "A mark's registration on the Principal Register in the Patent and Trademark Office

1    ("PTO") is evidence of the validity of the registered mark." *Tanvir*, 2017 WL 2986219, at *3

2    (citation omitted).

3            With respect to the second issue, Plaintiff has also demonstrated that Defendant's use of its

4    marks is likely to cause consumer confusion.  In the instant case, Plaintiff alleges Defendant

5    "intentionally and knowingly used in commerce the reproductions, counterfeits, copies, and/or

6    colorable imitations of Plaintiff's registered marks in connection with the sale, offering for sale,

7    and/or distribution of Defendant's software products by importing, offering, advertising,

8    promoting, retailing, selling, and/or distributing counterfeit and/or unauthorized copies of Adobe-

9    Branded Software bearing Plaintiff's Trademarks."  Compl. ¶ 57.  "When the alleged infringer

10   knowingly adopts a mark similar to another's, we must presume that the public will be deceived."

11   *M2 Software, Inc. v. Madacy Entertainment Corp.*, 421 F.3d 1073, 1085 (9th Cir. 2005) (citation

12   omitted).  Furthermore, "[a] party's failure to participate in litigation indicates a willful use of a

13   counterfeit mark," and where, as here, a defendant "disregard[s] [a] cease-and-desist notice and

14   continue[s] to sell," this "is further evidence of . . . intentionality."  *Tanvir*, 2017 WL 2986219, at

15   *4 (citations omitted).

16           Accordingly, Plaintiff sufficiently alleges that Defendant's counterfeit and unauthorized

17   use of its registered trademarks is likely to cause confusion.  *Id.*; *Acheampong*, 2019 WL 7212311,

18   at *5 ("Here, taking the factual allegations in the Complaint as true, Defendant misappropriated

19   Plaintiff's 'Adobe' trademark and affixed it to counterfeited products that appear substantially

20   similar to those sold by Plaintiff, and then sold and marketed those products through an online

21   marketplace.  Accordingly, the undersigned finds that Defendant's use of the 'Adobe' mark would

22   cause consumer confusion."); *Adobe Sys. Inc. v. Gray*, 2017 WL 3083686, at *5 (N.D. Cal. June

23   22, 2017), *report and recommendation adopted*, 2017 WL 3051482 (N.D. Cal. July 19, 2017)

24   ("[Plaintiff] likewise sufficiently charged that Defendant advertised and sold counterfeit discs on

25   eBay that were advertised as Adobe products without Adobe's permission; thus, Defendant's use is

26   likely to confuse or deceive customers as to their source.").

27           As a result, "[b]ecause the trademark-infringement, unfair-competition, and business-

28

United States District Court
Northern District of California

19

practices causes of action share the same analysis, [Defendant] has properly stated all three claims." *Tanvir*, 2017 WL 2986219, at *4.

### b.  Plaintiff Adequately Pleads Claim Four for Federal Copyright Infringement

To state a claim for copyright infringement, "two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Here, Plaintiff sufficiently alleges its ownership of various copyrights at issue in the instant case and provides documentation of its copyright registrations.  Compl. ¶¶ 18, 80; *id.*, Ex. B.  Plaintiff also adequately alleges that Defendant, without consent or authorization, intentionally and knowingly reproduced and counterfeited Plaintiff's protected works by importing, offering, advertising, promoting, and selling counterfeit and unauthorized software that was, at minimum, substantially similar to Plaintiff's copyrights.  *Id.* ¶¶ 81–82.  "Accordingly, both elements of the copyright infringement claim are met, and Plaintiff has successfully stated a claim upon which it may recover damages." *Dafang*, 2019 WL 7841862, at *6; *see also Tanvir*, 2017 WL 2986219, at *5 (holding under similar facts that Adobe successfully stated a copyright infringement claim and satisfied the second and third *Eitel* factors).

Therefore, the second and third *Eitel* factors weigh in favor of granting default.

### 3.  Fourth *Eitel* Factor: The Amount of Money at Stake

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo Inc. v. Cal Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002); *see also Eitel*, 782 F.2d at 1471-72.  "The Court considers Plaintiff's declarations, calculations, and other documentation of damages in determining if the amount at stake is reasonable." *Trung Giang Corp. v. Twinstar Tea Corp.*, 2007 WL 1545173, at *12 (N.D. Cal. May 29, 2007).  Default judgment is disfavored when a large amount of money is involved or is unreasonable in light of the potential loss caused by the defendant's actions. *Id.*

Nonetheless, courts have found that this factor "presents no barrier to default judgment" even when millions of dollars were at stake, as long as the potential damages were "proportional

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

1    to the harm alleged." *See Liu Hongwei v. Velocity V Ltd.*, 2018 WL 3414053, at *8 (C.D. Cal.

2    July 11, 2018) (finding that a request of $4,000,000 was justified); *United States v. Roof Guard*

3    *Roofing Co.*, 2017 WL 6994215, at *3 (N.D. Cal. Dec. 14, 2017) (holding that a request "totaling

4    over a million dollars" was reasonable because the tax debt was substantiated with proof provided

5    by the government).

6        Here, Plaintiff's motion for default judgment seeks to recover a total of $214,845.31 or

7    what Plaintiff can document as "Defendant's known total revenue."  Mot. at 1, 23; Pham Decl.

8    ¶ 15.  The Court holds that this request is reasonable and proportional to the numerous federal and

9    state law violations set forth in Plaintiff's complaint.  Indeed, in cases involving the same Plaintiff

10   and similar claims for trademark and copyright infringement, courts have granted default

11   judgment and awarded even higher amounts.  *See, e.g.*, *Dafang*, 2019 WL 7841862, at *6

12   (awarding $360,000 in statutory damages and $10,800 in attorney's fees); *Gray*, 2017 WL

13   3083686, at *7 (awarding $360,000 in statutory damages).  Therefore, the fourth *Eitel* factor

14   weighs in favor of default judgment.

### 4.  Fifth and Sixth *Eitel* Factors: Potential Disputes of Material Fact and Excusable Neglect

15       The fifth *Eitel* factor considers the possibility of disputes as to any material facts in the

16   case.  Where a defendant fails to appear in an action, a court can infer "the absence of the

17   possibility of a dispute concerning material facts."  *Solaria Corp. v. T.S. Energie e Risorse, S.R.I.*,

18   2014 WL 7205114, at *3 (N.D. Cal. Dec. 17, 2014).  Defendant has failed to make an appearance

19   in this case.  The Court therefore takes the allegations in the Complaint as true and holds that there

20   is no dispute over material facts.  *Fair Hous. of Marin*, 285 F.3d at 906.

21       The sixth *Eitel* factor considers whether failure to appear was the result of excusable

22   neglect.  A summons was issued for Defendant on October 4, 2018.  ECF No. 10.  An affidavit of

23   service shows that Defendant was personally served and accepted service of Plaintiff's complaint

24   on December 3, 2018.  ECF No. 16.  Indeed, on December 25, 2018, Plaintiff and Defendant

25   stipulated that Defendant would have until January 23, 2019 to answer Plaintiff's complaint.  ECF

*United States District Court*
*Northern District of California*

21

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

No. 17.  Defendant signed the stipulation as a *pro se* litigant but thereafter refused to take any actions in instant case.  *Id.*  Based on this record, nothing before the Court suggests that Defendant's failure to appear or litigate this case was the result of excusable neglect.  In these circumstances, it appears that Defendant has no excusable reason to fail to appear in the instant case.

Thus, the fifth and sixth *Eitel* factors favor entry of default judgment.

### 5.  Seventh *Eitel* Factor: Policy Favoring Decision on the Merits

While the policy favoring decision on the merits generally weighs strongly against awarding default judgment, district courts have regularly held that this policy, standing alone, is not dispositive, especially where a defendant fails to appear or defend itself.  *See, e.g.*, *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010); *Hernandez v. Martinez*, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014).  Although Defendant was properly served, Defendant has not made an appearance nor challenged the entry of default.  Thus, the likelihood of the case proceeding to a resolution on the merits is unlikely.  Accordingly, the Court finds that this factor slightly weighs against default judgment.

### 6.  Balancing of *Eitel* Factors

In sum, six of the *Eitel* factors in the instant case weigh in favor of default judgment: the possibility of prejudice, the merits of Plaintiff's substantive claims, the sufficiency of the complaint, the sum of money at stake in the action, the possibility of a dispute concerning material facts, and excusable neglect.  *See Eitel*, 782 F.2d at 1471–72.  The last factor, the policy favoring decisions on the merits, weighs slightly against default judgment.

The Court finds that the seventh *Eitel* factor is outweighed by the other six factors that favor default judgment.  *See, e.g.*, *Hernandez*, 2014 WL 3962647, at *9 (seventh *Eitel* factor outweighed by remaining six factors where defendants failed to appear for over a year and a half prior to the default judgment).  The Court therefore finds that default judgment is appropriate in this case.

### C.  Remedies

22

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

United States District Court
Northern District of California

United States District Court
Northern District of California

A plaintiff seeking default judgment "must also prove all damages sought in the complaint." *Dr. JKL Ltd.*, 749 F. Supp. 2d at 1046 (citing *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)). Federal Rule of Civil Procedure 55 does not require the Court to conduct a hearing on damages, as long as the Court ensures that there is an evidentiary basis for the damages awarded in the default judgment. *See Action SA v. Marc Rich & Co.*, 951 F.2d 504, 508 (2d Cir. 1991), *abrogated on other grounds as recognized by Day Spring Enters., Inc. v. LMC Int'l, Inc.*, 2004 WL 2191568 (W.D.N.Y. Sept. 24, 2004).

As discussed above, Plaintiff seeks injunctive relief and $214,845.31 in statutory damages. Mot. at 23–25.

### 1. Injunctive Relief

Plaintiff seeks entry of a permanent injunction against Defendant to prevent future infringing activity. Specifically, Plaintiff requests a permanent injunction as follows:

(1) enjoining and permanently restraining Defendant from copying, importing, advertising, offering for sale, selling and/or distributing, whether directly or indirectly, counterfeit ADOBE®, A ADOBE®, A®, and ACROBAT®-branded related computer software, including any software bearing Plaintiff's marks that are confusingly similar to the trademarks, trade names, designs or logos of Plaintiff;

(2) enjoining and permanently restraining Defendant from using Plaintiff's registered ADOBE®, A ADOBE®, A®, and ACROBAT® trademarks in commerce or any copy, reproduction, or colorable imitation, or confusingly similar simulation of Plaintiff's trademarks on or in connection with the promotion, advertising, distribution, manufacture or sale of any computer software;

(3) ordering Defendant to cancel, withdraw and recall all his promotions, advertisements and merchandise bearing Plaintiff's registered trademarks or any confusingly similar simulation to Plaintiff's registered trademarks, which have been published, placed or shipped by Defendant or under Defendant's authority, to any person, entity, or customer, including, without limitation, any publisher, agency, wholesaler, distributor,

23

1    retailer, consignor or marketer, and also deliver to each publisher or customer a copy of

2    this Court's order as it relates to said injunctive relief against Defendant; and

3    (4) ordering Defendant to deliver to Plaintiff for destruction all ADOBE computer

4    software, including but not limited to the Adobe Acrobat X Pro© and Adobe Acrobat

5    XI Pro© software, in his possession or under his control to the extent that any of these

6    items are in Defendant's possession and not lawfully licensed by Defendant from

7    Plaintiff.

8    Mot. at 24–25.

9    Under the Lanham Act, courts have the "power to grant injunctions, according to the

10   principles of equity and upon such terms as the court may deem reasonable, to prevent the

11   violation of any right" of the trademark holder.  15 U.S.C. § 1116(a).  "Injunctive relief is the

12   remedy of choice for trademark . . .  cases, since there is no adequate remedy at law for the injury

13   caused by a defendant's continuing infringement."  *Century 21 Real Estate Corp. v. Sandlin*, 846

14   F.2d 1175, 1180 (9th Cir. 1988).

15   Similarly, under the Copyright Act, courts have power to "grant temporary and final

16   injunctions on such terms as it may deem reasonable to prevent or restrain the infringement of a

17   copyright."  17 U.S.C. § 502(a).  "Generally, a showing of copyright infringement liability and the

18   threat of future violations is sufficient to warrant a permanent injunction."  *Jackson v. Sturkie*, 255

19   F. Supp. 2d 1096, 1103 (N.D. Cal. 2003) (quoting *Sega Enters. Ltd. v. MAPHIA*, 948 F. Supp.

20   923, 948 (N.D. Cal. 1996)); *id*. ("[D]efendant's past behavior and on-going ability to infringe

21   plaintiff's copyright constitute a continued threat of future infringing activity.").

22   Here, the Court concludes that Plaintiff is entitled to a permanent injunction.  Plaintiff sent

23   multiple cease-and-desist letters to Defendant, but Defendant continues to infringe on Plaintiff's

24   trademarks and copyrights.  Compl. ¶¶ 29, 32, 36, 41; Pham Decl. ¶ 17; Pham Decl., Ex. 15.

25   "Additionally, Defendant's failure to appear in this action makes it difficult for plaintiff to prevent

26   further infringement."  *Acheampong*, 2019 WL 7212311, at *9.  Without a permanent injunction,

27   Plaintiff will be harmed by defendant's continuing infringement and the threat of future violations.

28

24

United States District Court
Northern District of California

1       Accordingly, the Court concludes that injunctive relief is appropriate here to prevent

2  Defendant from making unauthorized use of Plaintiff's intellectual property.  *See id.*; *Tanvir*, 2017

3  WL 2986219, at *6 (N.D. Cal. July 13, 2017) (granting injunctive relief in similar circumstances);

4  *Dafang*, 2019 WL 7841862, at *9 (same).

5      **2.  Statutory Damages**

6       For trademark infringement, Plaintiff may recover statutory damages of "not less than

7  $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for

8  sale, or distributed, as the court considers just."  *See* 15 U.S.C. § 1117(c)(1).  If the Court

9  determines that the infringement was willful, however, a plaintiff may recover a maximum of

10  $2,000,000 per mark infringed.  *See id.* § 1117(c)(2); *see Dafang*, 2019 WL 7841862, at *7

11  ("Section 1117(c) permits an award in an amount up to $200,000 per counterfeit mark or up to

12  $2,000,000 per counterfeit mark if the use of the mark was willful.").

13       For copyright infringement, a plaintiff may elect to recover statutory damages "of not less

14  than $750 or more than $30,000 as the court considers just."  17 U.S.C. § 504(c)(1).  If the Court

15  determines that the infringement was willful, however, a plaintiff may recover a maximum of

16  $150,000 per work infringed.  *See id.* § 504(c)(2).

17       Here, Plaintiff has adequately pleaded that Defendant's trademark and copyright

18  infringement was willful.  As Plaintiff notes, Defendant could therefore be liable for millions of

19  dollars.  Mot. at 23.  Courts, however, have "discretion to determine statutory damages, subject

20  only to the statutory minima and maxima."  *Tanvir*, 2017 WL 2986219, at *7 (collecting cases).

21  Courts should ensure that statutory damages awards on default judgment "bear[] a 'plausible

22  relationship to Plaintiff's actual damages.'"  *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1102 (N.D.

23  Cal. 2014) (quoting *Adobe Sys., Inc. v Tilley*, 2010 WL 309249, at *5 (N.D. Cal. Jan. 19, 2010)).

24  "While a plaintiff in a trademark or copyright infringement suit is entitled to damages that will

25  serve as a deterrent, it is not entitled to a windfall."  *Id.*

26       In light of this authority, Plaintiff requests only $214,845.31—an amount that is

27  "representative of Defendant's known total revenue" for counterfeiting and selling Plaintiff's

28

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

products.  Mot. at 23.  As noted previously, courts have awarded higher amounts in statutory

damages for similar conduct involving the same Plaintiff.  *See, e.g.*, *Dafang*, 2019 WL 7841862,

at *6 (awarding $360,000 in statutory damages for willful trademark and copyright infringement

and $10,800 in attorney's fees); *Gray*, 2017 WL 3083686, at *7 (awarding $360,000 in statutory

damages for willful trademark and copyright infringement).

      Accordingly, the Court finds that a total award of $214,845.31 for Defendant's willful

trademark and copyright infringement "bears a plausible relationship to Plaintiff's actual

damages," will adequately "serve as a deterrent," and will not constitute a "windfall" to Plaintiff.

*See Yelp Inc.*, 70 F. Supp. 3d at 1102 (quotation marks omitted).  Therefore, the Court finds that

Plaintiff is entitled to $214,845.31 in statutory damages.

## IV.    CONCLUSION

      For the foregoing reasons, the Court GRANTS Plaintiff's motion for default judgment.

Specifically, the Court awards Plaintiff injunctive relief as follows:

(1) enjoining and permanently restraining Defendant from copying, importing, advertising,
offering for sale, selling and/or distributing, whether directly or indirectly, counterfeit
ADOBE®, A ADOBE®, A®, and ACROBAT®-branded related computer software,
including any software bearing Plaintiff's marks that are confusingly similar to the
trademarks, trade names, designs or logos of Plaintiff;

(2) enjoining and permanently restraining Defendant from using Plaintiff's registered
ADOBE®, A ADOBE®, A®, and ACROBAT® trademarks in commerce or any copy,
reproduction, or colorable imitation, or confusingly similar simulation of Plaintiff's
trademarks on or in connection with the promotion, advertising, distribution,
manufacture or sale of any computer software;

(3) ordering Defendant to cancel, withdraw and recall all his promotions, advertisements
and merchandise bearing Plaintiff's registered trademarks or any confusingly similar
simulation to Plaintiff's registered trademarks, which have been published, placed or
shipped by Defendant or under Defendant's authority, to any person, entity, or

Case No. 18-CV-06063-LHK
ORDER GRANTING MOTION FOR DEFAULT JUDGMENT

1  customer, including, without limitation, any publisher, agency, wholesaler, distributor,

2  retailer, consignor or marketer, and also deliver to each publisher or customer a copy of

3  this Court's order as it relates to said injunctive relief against Defendant; and

4  (4) ordering Defendant to deliver to Plaintiff for destruction all ADOBE computer

5  software, including but not limited to the Adobe Acrobat X Pro© and Adobe Acrobat

6  XI Pro© software, in his possession or under his control to the extent that any of these

7  items are in Defendant's possession and not lawfully licensed by Defendant from

8  Plaintiff.

9  Additionally, the Court awards Plaintiff $214,845.31 in statutory damages.

10  **IT IS SO ORDERED.**

11

12  Dated: June 23, 2020

13  _Lucy H. Koh_

14  LUCY H. KOH
   United States District Judge

15

16

17

18

19

20

21

22

23

24

25

26

27

28

27

United States District Court
Northern District of California